# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11202

United States Court of Appeals
Fifth Circuit

**FILED**
November 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

>   Plaintiff - Appellee

v.

HERBERT PHILIP ANDERSON, also known as Andy,

>   Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-192

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

Herbert Philip Anderson was convicted of money laundering and participating in a drug-trafficking conspiracy. After his direct appeal, Anderson timely filed a motion under 28 U.S.C. § 2255. We granted a COA on two issues: (1) whether appellate counsel rendered ineffective assistance of counsel; and (2) whether the Government knowingly used material, perjured testimony to secure Anderson's conviction. On the former, we AFFIRM the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-11202

district court's ruling denying relief. On the latter, we REMAND to the district court for an evidentiary hearing. We also GRANT Anderson's motion to supplement the record on appeal.

## BACKGROUND

A jury convicted Anderson of money laundering and participating in a drug-trafficking conspiracy on July 14, 2010. This court affirmed on direct appeal. *United States v. Holt*, 493 F. App'x 515, 517 (5th Cir. 2012).[1]

After the Supreme Court denied certiorari, Anderson filed a motion under 28 U.S.C. § 2255. The district court denied his motion in all respects, but we granted a COA on the following two issues:

1. "[W]hether appellate counsel rendered ineffective assistance by making 'no offer of proof as to what arguments Anderson was foreclosed from making in his abbreviated closing argument,' and for failing to 'state on appeal how his argument would have been different if allowed additional time.'"[2]

2. "[W]hether the Government knowingly used material, perjured testimony."

With respect to the first COA issue, it is pertinent that the district court divided twelve minutes of closing argument time equally among Anderson and his two co-defendants. Anderson's trial counsel asked for and received a fifth minute after telling the court that his argument would be "a little bit more involved." Trial counsel made no further requests for additional time or objections.

---

[1] Our opinion on direct appeal recounts the facts of the conspiracy in greater detail. *See Holt*, 493 F. App'x at 517.

[2] Internal quotations reference the opinion on direct appeal, *Holt*, 493 F. App'x at 522.

2

No. 14-11202

With respect to the second COA issue, Anderson has collected several statements that, if credited, would call into doubt trial testimony offered by Government witnesses.

## JURISDICTION

This court has appellate jurisdiction over the two issues on which we granted a COA. *See* 28 U.S.C. § 2253. The Supreme Court denied certiorari regarding Anderson's direct appeal on March 18, 2013. *See Anderson v. United States*, 133 S.Ct. 1619 (2013). Anderson filed his motion under 28 U.S.C. § 2255 on March 17, 2014. Anderson's motion was therefore timely. *See* 28 U.S.C. § 2255(f)(1). The district court denied Anderson's motion on October 6, 2014, and Anderson timely filed a notice of appeal on November 3, 2014.

## STANDARD OF REVIEW

"When reviewing a denial of a § 2255 motion, we review factual findings for clear error and conclusions of law *de novo*." *United States v. Williamson*, 183 F.3d 458, 461 (5th Cir. 1999). In this context, "[w]e review an ineffective assistance of counsel claim *de novo*." *Id.* at 462.

The Government "denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected." *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998). "The defendant must show that (1) the testimony was false, (2) the state knew it was false, and (3) the testimony was material." *Id.* "This test presents a mixed question of law and fact, and thus we review the underlying facts for clear error and the conclusions from the facts *de novo*." *Id.*

## DISCUSSION

### I. Anderson's ineffective assistance claim

Anderson's claim for ineffective assistance of appellate counsel fails to establish that any deficiency in his counsel's performance caused him prejudice. Even perfect performance by appellate counsel would not likely have

3

rendered the error Anderson perceives "clear or obvious" in the eyes of the direct appeal panel.

"We judge counsel's appellate performance under the same two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), applicable to trial performance." *Williamson*, 183 F.3d at 462. "To prevail, [Anderson] must establish, first, that his attorney's representation was deficient and, second, that the deficient performance caused him prejudice." *Id.*

A. <u>Deficient performance</u>

"To prove deficient performance, [Anderson] must show that counsel's failure to raise [an] argument 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Jones v. Jones*, 163 F.3d 285, 301 (5th Cir. 1998) (quoting *Strickland*, 466 U.S. at 688)). "Our review is deferential," *Williamson*, 183 F.3d at 462, and Anderson "must overcome [a] 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Jones*, 163 F.3d at 301 (quoting *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997)). Counsel does, however, have "an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Williamson*, 183 F.3d at 462. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* at 463.

During the direct appeal, Anderson's appellate counsel did argue the district court erred through its severe restriction of the time permitted for closing argument. Counsel framed his argument under the abuse of discretion standard of review. The direct appeal panel, however, reviewed only for plain error due to trial counsel's failure to object or request additional time at the end of his closing argument, *see Holt*, 493 F. App'x at 522.

Anderson submits that appellate counsel performed deficiently by failing to frame his argument in terms of plain error review.  The district court concluded that appellate counsel's decision to argue under the abuse of discretion framework "cannot be said to stem from professional judgment." As discussed below, we conclude that Anderson's claim fails on the second prong of the *Strickland* analysis. Therefore, with respect to *Strickland*'s first prong, we assume without deciding that Anderson's counsel on direct appeal rendered a deficient performance.

### B. Prejudice

"To prove prejudice from [counsel's] deficient performance, [Anderson] must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Williamson*, 183 F.3d at 463 (quoting *Jones*, 163 F.3d at 302 (quoting *Strickland*, 466 U.S. at 694)) (alteration in *Williamson* omitted). "A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome." *Williamson*, 183 F.3d at 463; *see also Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

To determine whether appellate counsel's performance "undermine[d] the result on direct appeal, making the sentence unfair or unreliable," we must "counter-factually determine the probable outcome on appeal had counsel" properly framed his argument. *Williamson*, 183 F.3d at 463. Trial counsel's failure to object to the limited time permitted for oral argument constrained us, on direct appeal, to review the issue for plain error. *See Holt*, 493 F. App'x at 522. We must determine whether there is a reasonable probability that the direct appeal would have reached a different result if appellate counsel had

recognized that plain error review applied and offered proof regarding other closing arguments Anderson would have made if given additional time.

"To demonstrate plain error, 'an appellant must show (1) a forfeited error, (2) that is clear or obvious, and (3) that affects [the appellant's] substantial rights.'" *United States v. Moreno*, 857 F.3d 723, 727 (5th Cir. 2017) (quoting *United States v. Cordova-Soto*, 804 F.3d 714, 722 (5th Cir. 2015)). "Even if those prongs of the test are satisfied, reversal is warranted 'only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' and this court chooses to exercise its discretion to correct the error." *Moreno*, 857 F.3d at 727 (quoting *Cordova-Soto*, 804 F.3d at 722).

We conclude that the direct appeal panel would not have deemed the trial court's error "clear or obvious" even under the counter-factual scenario. The direct appeal panel stated that the district court's limitation on closing argument "arguably" amounted to an abuse of discretion. *See Holt*, 493 F. App'x at 521. An error is not "clear or obvious" if it is "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). To succeed in this appeal, Anderson would need to establish that appellate counsel's proper argument would have moved the question of whether the trial court erred from "arguable" to "clear or obvious," i.e., beyond reasonable dispute. Appellate counsel's argument could not have changed the fact that trial counsel received the extra minute he requested, and failed to make any further objection. Anderson has offered no authorities establishing that the district court's limitations were, beyond any reasonable dispute, an abuse of discretion even where trial counsel received precisely what counsel requested.[3]

---

[3] We decline Anderson's invitation to "expand" the certificate of appealability to include trial counsel's performance. *Cf. United States v. Reed*, 719 F.3d 369, 372 n.1 (5th Cir. 2013) (confining review to the claims upon which a certificate of appealability was granted).

No. 14-11202

## II.    Anderson's false testimony claim

Anderson also contends he was convicted through the Government's knowing presentation of false testimony. "To establish a due process violation based on the government's use of false or misleading testimony, [Anderson] must show that (1) the testimony in question was actually false; (2) the testimony was material; and (3) the prosecution had knowledge that the testimony was false." *United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Bagley*, 473 U.S. 667, 678 (1985) (internal quotation marks and citation omitted). The district court is required to hold an evidentiary hearing on this claim "[u]nless the motion and the files and records of the case conclusively show [Anderson] is entitled to no relief." 28 U.S.C. § 2255.

The district court did not hold an evidentiary hearing, and did not reach the question of whether any trial testimony was actually false. Rather, it ruled that Anderson's claim failed because Anderson showed "no basis [from which] to conclude that the [G]overnment knew of any false evidence being presented." We conclude that Steven Adams' January 10, 2016, letter, which was not before the district court,[4] warrants remanding to the district court to re-determine if

---

[4] Anderson moved to supplement the record with Adams' letter, and the Government opposed. Though we do not lightly grant motions to supplement the record with material not presented to the district court, *see Ghali v. United States*, 455 F. App'x 472, 476 (5th Cir. 2011) (unpublished) ("The purpose of [Federal Rule of Appellate Procedure] 10(e) is to ensure that the record on appeal accurately reflects what happened in the district court . . . not . . . to 'supply what might have been done [in the district court] but was not.'") (quoting *United States v. Page*, 661 F.2d 1080, 1082 (5th Cir. 1981)), "it is clear that the authority to do so exists," *Gibson v. Blackburn*, 744 F.2d 403, 405 (5th Cir. 1984). In this case, we are persuaded

No. 14-11202

Anderson is entitled to an evidentiary hearing. Though we have long viewed unsupported recanting affidavits with extreme suspicion, *see Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005), Adams' affidavit is corroborated by extensive evidence, including Adams' own written statements prior to his testimony and numerous witness statements since.

In September 2009, Adams wrote a letter stating that "at no time" had he ever witnessed Anderson, or anyone around him, "doing any drugs or being involved in any illegal activity." David Burney, Adams' former cellmate, claims that Adams directly informed the prosecutor of this letter prior to the trial. Indeed, there is little doubt that the prosecutor was aware of the 2009 letter given that he questioned Adams about it during Anderson's trial. Further, Anderson's defense counsel read the entirety of the letter into the trial record.

If the prosecutor was aware of the 2009 letter, then the prosecutor was aware that Adams had claimed that Anderson had no connection to illegal drug activity. Nonetheless, through the prosecutor's direct questioning, Adams testified that Anderson was involved in the purchase of methamphetamine. At that time, Adams disavowed his 2009 letter by claiming that he had written those statements under pressure from Anderson.

Adams now claims that his 2009 letter was "the truth" and that he "made up" his trial testimony "because of a promise [from the prosecution] on a [lenient] sentence." This 2016 letter, directly from Adams, is significant because it both corroborates, and is corroborated by, statements in the record indicating that Adams testified falsely.

that Adams' repudiation of his trial testimony warrants the exercise of our discretion to permit supplementation.

8

No. 14-11202

Moreover, and critically, the 2016 letter corroborates witness statements indicating that the prosecutor both knew that Adams' testimony was false and coached Adams on how to falsely testify. According to Burney, upon learning of the 2009 letter, the prosecutor told Adams "not to worry about it" as they would "get it to where they can't use it." Moreover, Burney claims that Adams' trial testimony reflected a "story" the Government "told [Adams] to come up with." Adams' 2016 letter provides corroboration for Burney's account, claiming that the prosecutor "coached [him] on how [to] implicate" Anderson. These allegations find further support in the statement of John Holt, who claims that the prosecutor repeatedly encouraged him to "come up" with incriminating statements against Anderson in exchange for leniency - despite Holt's repeated assertions exonerating Anderson.

We make no determination at this time whether the prosecutor, or any Government agent, actually knew that Adams' testimony was false. Nor do we make any determination of whether an evidentiary hearing is warranted. We find only that on the facts of this case, Adams' 2016 recanting letter is sufficiently corroborated to warrant a remand for re-consideration by the district court if an evidentiary hearing is required. Anderson is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show [he] is entitled to no relief." 28 U.S.C. § 2255.

## CONCLUSION

For the reasons stated above, we AFFIRM the direct appeal panel's finding that Anderson has failed to show he suffered from ineffective assistance of counsel, GRANT Anderson's motion to supplement the record, and REMAND the case to the district court to determine whether an evidentiary hearing is required in light of the new evidence.